IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DANA L. ZANDERS,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:24-CV-02639-JMC |
| **HOWARD LUTNICK, SECRETARY,** <br> **U.S. DEPARTMENT OF COMMERCE,** | * | |
| | * | |
| *Defendant*. | * | |
| | * | |

\* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Dana L. Zanders, filed this employment discrimination action *pro se* against Defendant, Howard Lutnick,[1] Secretary of the United States Department of Commerce, on September 12, 2024. (ECF No. 1). Plaintiff thereafter amended her complaint with the assistance of counsel on November 11, 2024. (ECF No. 4). Subsequently, Defendant filed a motion to dismiss, which the Court granted with leave to amend on August 11, 2025.  (EF No. 29).  Plaintiff filed a Second Amended Complaint on September 8, 2025, which is the operative Complaint in this matter.  (ECF No. 30).  Plaintiff asserts three claims against Defendant: (1) discrimination as a result of her race, color, sex, and for her participation in a protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I); (2) discrimination due to her disabilities, in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 *et seq.*, (Count II); and (3) discrimination on the basis of her age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C.

---

[1] Plaintiff originally named Gina Raimondo, the former Secretary for the United States Department of Commerce, as the defendant in this matter. (ECF No. 1). Howard Lutnick is the current Secretary and was therefore substituted as the defendant in this matter pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 25(d).

§ 621, *et seq. Id.* Presently pending before the Court is Defendant's Second Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 37). The motion has been fully briefed, (ECF Nos. 37, 40, 43), and no hearing is necessary. *See* Loc. R 105.6 (D. Md. 2025). For the reasons set forth herein, Defendant's Motion, (ECF No. 37), shall be GRANTED in part and DENIED in part.

## I.    BACKGROUND

Plaintiff is an African American woman with dark, brown skin, who was born on October 28, 1968. (ECF No. 30-1 at 6).[2] She has been diagnosed with migraines, spinal issues, Attention Deficit Hyperactivity Disorder ("ADHD"), Temporomandibular Joint Disfunction, and Post Traumatic Stress Disorder ("PTSD"). *Id.* Since July 2017, Plaintiff has held the position of Senior Management Analyst/Budget Officer for the National Oceanic and Atmospheric Administration, National Weather Service, Analyze, Forecast, and Support Office in Silver Spring, Maryland ("Agency"). *Id.* At all times relevant to the present litigation Plaintiff was supervised by James F. Hruska, who served as Plaintiff's first-level supervisor, and Andrew D. Stern ("Director Stern"), Plaintiff's second-level supervisor. *Id.* at 9.

In or around early 2018, Plaintiff "began regularly complaining" to Mr. Hruska about the alleged sexist and racist behavior of a coworker, John "Brad" Mena ("Mr. Mena"). *Id.* at 6. Plaintiff alleges that Mr. Mena knew Plaintiff has a "Veteran Affairs ("VA") disability for [her] spine and had spinal surgery in 2018." *Id.* Plaintiff asserts she felt uncomfortable working in close proximity to Mr. Mena, and as they shared adjoining cubicles, Plaintiff requested that they should be separated. *Id.* at 6-7. "Mr. Hruska agreed that Mr. Mena was prejudiced against women, but downplayed Plaintiff's concerns regarding racism and denied her request to be moved." *Id.* at 7.

---

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

On July 30, 2018, Plaintiff asserts that Mr. Mena "had a violent outburst in the office in which he threw a bottle at Plaintiff's head, tried to strike her, and screamed profanities." *Id.* "As a result of this incident, Plaintiff developed [PTSD]." *Id.*

In March of 2019, Plaintiff "volunteered for the role of Approving Official for purchase card transactions." *Id.* In that role, Plaintiff "attempted to hold people accountable to the rules and regulations provided for in the Commerce Acquisition Manual 1313.301 and the Delegation Approving Official Authority Memorandum, dated February 21, 2019." *Id.* (internal quotations omitted). In July 2019 and in March 2020, Plaintiff "emailed Mr. Hruska to resign her position as Approving Official." *Id.* Plaintiff alleges Mr. Hruska never approved her resignation, but he emailed her on March 31, 2020 stating the "long term plan is for Derrek [Little] to become our bank card approving official" and that Mr. Hruska was "attempting to expedite his certification." *Id.* at 8. Plaintiff then asserts "Mr. Hruska revoked Plaintiff's telework agreement as a result of a discriminatory bias. *Id.*

On January 2, 2020, Plaintiff told Mr. Hruska "that the Agency was a 'textbook case of institutional racism,' and that the Agency leadership would have handled her assault by Mr. Mena differently if she had been white and Mr. Mena had been African American." *Id.* "Mr. Hruska dismissed her concerns." *Id.* On April 1, 2020, Plaintiff filed an internal EEO complaint alleging harassment because "Mr. Hruska had been sender he emails 'questioning her skills and undermining her authority' on the basis of her race, color and []or sex.'" *Id.* (alteration in original). On April 27, 2020, Mr. Hruska issued a Letter of Caution to Plaintiff, which "accus[ed] Plaintiff of failing to perform her duties as the Approving Official," such as reviewing government purchase card transactions. *Id.* Plaintiff asserts that prior to Mr. Hruska's Letter of Caution, "no one had brought concerns relating to her performance or conduct to Plaintiff's attention." *Id.* Additionally,

Platiniff asserts that prior to the Letter of Caution, she and Mr. Hruska had conversations about, but were unable to agree upon, the regulatory obligations of the Approving Official role. *Id.* at 9. The Letter of Caution "included language informing Plaintiff that [it] was part of a process which included 'disciplinary action[s] up to and including removal from the Federal service.'" *Id.* at 8. Plaintiff asserts that Director Stern and Mr. Hruska "overruled her review of purchase card transactions" at an unspecified time. *Id.* at 9. Subsequently, Plaintiff "provided Mr. Hruska the correct information he needed to complete the amendments for the travel order and explained to him again that she could not make the corrections to the travel order and budget/fund certify it." *Id.* Moreover, "Plaintiff informed Mr. Hruska that removal of the signature block of the Head of Contracting from the revised NOAA Form 36-31 was a violation of Commerce Acquisition Manual 1313.301." *Id.*

On May 12, 2020, "Mr. Hruska issued Plaintiff a Letter of Performance Expectations and Requirements." *Id.* In the Letter of Performance Expectations and Requirements, "Mr. Hruska indicated that Plaintiff endorsing PCAR requests with the language 'Duress and Protest' precluded AFSO from processing PCAR requests and ordered Plaintiff to '[c]ease adding Duress and Protest after [her] name. The phrase is not authorized and confuses the other PCAR reviewers.'" *Id.* Mr. Hruska allegedly also stated, "[a]s you are currently AFSO's only bank card approving official, your actions continue to negatively impact AFSO's business operations." *Id.*

On June 10, 2020, Mr. Hruska sent Plaintiff an email, copying Director Stern, indicating Plaintiff's performance during a budget meeting was unsatisfactory. *Id.* "Plaintiff had asked for the meeting to be postponed due to her increased workload in the preceding days, but Mr. Hruska denied her request and proceeded to berate her for being unprepared." *Id.* at 10. Plaintiff alleges that in contrast, "Mr. Hruska routinely gave a light workload to Dena Crossland, Program Analyst,

GS-0343-12 ("Ms. Crossland") (Race: Caucasian; Color: white; Sex: female; Age: Y.O.B. approximately 1974; Disability status: unknown), an employee supervised by Mr. Hruska who performed duties similar to Plaintiff's, and expressed concerns about Ms. Crossland being 'overwhelmed.'" *Id.* Plaintiff continues to allege an example of one instance in which Ms. Crossland received no negative feedback for "fail[ing] to complete her responsibility of reconciling property on the monthly Unreconciled Payments Report ("UPR"). *Id.* Instead, Plaintiff asserts Ms. Crossland received "a mid-year performance cash award." *Id.* Turning back to her allegations concerning the June 10, 2020 email, Plaintiff next alleges she sent a reply-email on June 15, 2020, indicating that "Mr. Hruska's criticism regarding the prior year's labor budget was misplaced as there was no way to anticipate carryover funding." *Id.*

Then "[o]n June 22, 2020, Director Stern wrote Plaintiff an email accusing her of failing to properly perform the duties of her position, including improperly transferring funds, accounting errors, and lack of discernable notes explaining the transfers." *Id.* "Plaintiff responded that same day, acknowledging that certain notations would be changed for ease of use, provided clarity to Director Stern where needed, and corrected Director Stern when he seemingly relied-upon false assumptions regarding her performance." *Id.* at 11. Plaintiff asserts she specifically included in her response to Director Stern, ""[a]re you asking me a question or assuming that I am not doing my job? Andy, you have not met with me on a regular basis since the Workplace Violence Incident with Brad [Mena]. You do not talk to me but rather prefer to use [Mr. Hruska] as the go between to voice your complaints about me and my job performance." *Id.* Thereafter, on June 23, 2020, "Mr. Hruska emailed Plaintiff informing her that she would no longer be permitted to work past her tour-of-duty, i.e., after the end of the workday, despite the Agency permitting her to do so since January 2017." *Id.* Plaintiff responded with the following over email:

> I wasn't working, that's the time I chose to respond to [Director Stern's] email because it wasn't a priority. In the future, if I don't get to respond to an email during my normal hours, I will respond to it when I return to the office. I know my duty hours, so please stop talking to me like I'm new to the government and be consistent with your emails. I worked outside my normal duty hours in the past without you sending me an email.

*Id.* She further asserts Mr. Hruska permitted Ms. Crossland to work past her tour-of duty frequently.

*Id.*

On July 6, 2020, Mr. Hruska issued a Letter of Reprimand to Plaintiff "accusing her of engaging in inappropriate conduct as a result of her response emails she sent to him and Director Stern." *Id.* at 12. Later that same day, Plaintiff submitted a second internal EEO complaint alleging discriminatory harassment, as a result of the June 10, 2020 emails, June 23, 2020 emails, and July 6, 2020 Letter of Reprimand. *Id.* at 11. Plaintiff was issued a Notice of Proposed Seven (7) Day Suspension on September 1, 2020, which was mitigated to a three (3) day suspension in October 2020. *Id.* at 12. The September 1, 2020 Notice indicated that "Plaintiff's August 6, 2020, interactions with Director Stern, one of which occurred during an in-person meeting and the other through email, lacked the requisite professionalism." *Id.* The Letter of Proposed Suspension also referenced the Letter of Caution and Letter of Reprimand as "aggravating factors." *Id.*

Plaintiff went on leave on October 7, 2020 following her son's death, and returned to the office on January 4, 2021. *Id.* at 13. Plaintiff claims that Mr. Hruska did not properly re-distribute her work while she was on leave, resulting in her having a substantial quantity of work to complete immediately upon her return in January. *Id.* While out on leave, Plaintiff filed a formal EEOC complaint. *Id.* at 4. On March 15, 2021, Plaintiff was issued a Notice of Proposed Removal, which was ultimately mitigated to a fourteen (14) day suspension on July 30, 2021. *Id.* at 13. Plaintiff filed an Amended Charge of Discrimination on March 17, 2021, to report the Notice of Proposed Removal. *Id.* at 4. The Agency issued a Report of Investigation on September 13, 2021, and

Plaintiff filed a second Formal Complaint of Discrimination on September 28, 2021. *Id.* On December 15, 2022, an Administrative Judge determined that Plaintiff's complaints did not warrant a hearing and ruled in favor of the Agency, concluding the evidence in the record was "insufficient to prove pretext, discriminatory intent, and objective hostility," and in fact supported "that management issued the letter of reprimand, proposed seven-day suspension, and proposed removal based on the incidents cited in those actions." *Id.* at 5; ECF No. 22-5 at 2. Plaintiff thereafter appealed the Administrative Judge's decision, which was affirmed by the OFO on June 11, 2024. *Id.* at 5. The OFO decision provided Plaintiff ninety (90) days to initiate a civil complaint in the appropriate United States District Court, resulting in the case *sub judice*. *Id.*

## II.   LEGAL STANDARD

Defendant's motion is styled as a motion to dismiss pursuant to Federal Rule 12(b)(6) or, in the alternative, for summary judgment under Federal Rule 56. (ECF No. 37). "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020) (citing *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011)). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Id.* at 626 (citation omitted). "Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*; *see also Sol v. M&T Bank*, No. 8:22-CV-02999-AAQ, 2024 WL 327086, at *4 (D. Md. Jan. 29, 2024) (collecting cases). "Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*,

2024 WL 327086, at *4. However, "'[e]ven in the absence of a Rule 56(d) affidavit,' a judge maintains 'complete discretion' to decline to convert a motion to dismiss to one for summary judgment." *Id.* (quoting *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 693 (D. Md. 2017)).

Converting Defendant's motion to dismiss into a motion for summary judgment is premature at this time as discovery has not yet commenced. *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) ("Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask."); *Akhmedov v. State of Md. Dep't of Pub. Safety*, No. ELH-15-00226, 2015 WL 6783182, at *12 (D. Md. Nov. 6, 2015) (citation omitted) ("Ordinarily, summary judgment is inappropriate 'where the parties have not had an opportunity for reasonable discovery.'"). Further, Plaintiff attaches a Rule 56(d) affidavit to her Opposition setting forth examples of the discovery materials that she believes will support her employment discrimination claims, such as testimony regarding the existence of an agreement between Mr. Hruska and Plaintiff concerning her work assignments; steps taken by Mr. Hruska to relieve Plaintiff of certain responsibilities; and the extent to which other employees were permitted to work beyond their tour-of-duty. (ECF No. 40-6); *McCray*, 741 F.3d at 484 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)) (explaining that Rule 56(d) motions are "'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions."). The Fourth Circuit has emphasized that permitting discovery to proceed is particularly necessary in employment discrimination cases such as this one, "where the main issue is one of motive and where most of the key evidence lies in the control of the moving party." *McCray*, 741 F.3d at 484. Without such information, Plaintiff has little ability to establish she was subjected to discrimination. *Compare id.* (explaining that without the opportunity to depose supervisors,

plaintiff in employment discrimination case "had no information on how positions were chosen for termination or why other positions were kept" and it was therefore "impossible for her to make an argument that she was fired because of discriminatory reasons."). The Court therefore declines to convert Defendant's motion to dismiss into a motion for summary judgment and will apply the Rule 12(b)(6) standard in assessing the instant motion.

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (other

citation omitted). Both parties attach a number of documents to their filings for the Court's consideration, including two lengthy reports of the investigation performed by the EEOC. (ECF Nos. 37-1; 37-3). The reports contain numerous records, including email communications between Plaintiff, Mr. Hruska, and Director Stern, declarations by those same individuals, and Plaintiff's performance and progress reports. *See id.* Because the undersigned has declined to convert Defendant's motion to dismiss into a motion for summary judgment, it will limit its review to the instant pleadings while taking judicial notice of the EEOC notice of intent to issue a decision,[3] and subsequent decision, (ECF No. 37-4; ECF No. 37-5), attached to Defendant's motion to dismiss. *Yampierre v. Balt. Police Dep't*, No. ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citation omitted) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions."); *see also Bowie v. Univ. of Md. Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.").

III.    ANALYSIS

      a.    <u>Plaintiff plausibly alleges facts that support a claim for discrimination on the basis of her race, color, and/or sex under Title VII.</u>

Defendant first argues that Plaintiff's Title VII claim must be dismissed, or in the alternative, that Defendant is entitled to summary judgment, because Plaintiff fails to allege a prima facie case of discrimination and because the Agency had legitimate, non-discriminatory reasons for disciplining Plaintiff. (ECF 37-1 at 16). Under Title VII, an employer is prohibited from discriminating against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

---

[3] The notice of intent is incorporated by reference into the Administrative Judge's final opinion. (ECF No. 22-5 at 1).

origin," and from "limit[ing], segregat[ing], or classify[ing] … employees or applicants from employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim for discrimination under Title VII through direct or circumstantial evidence that "discrimination motivated the employer's adverse employment decision." *Yampierre v. Balt. Police Dep't*, No. ELH-21-1209, 2023 WL 6049489, at *25 (D. Md. Sept. 15, 2023) (citation omitted). Alternatively, a plaintiff may establish their claim through the three-step burden-shifting scheme set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973) ("*McDonnell Douglas*"). *McDonnell Douglas* provides "a 'pretext' framework, under which the [plaintiff], after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Yampierre*, 2023 WL 6049489 at *25.

A Title VII plaintiff establishes a prima facie case of discrimination on the basis of disparate treatment by demonstrating four elements: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). However, at the motion to dismiss stage, a plaintiff is not required to plead a prima facie case of discrimination. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz v. Sorema N.A.*, 524 U.S. 506, 515 (2002)) ("In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss."); *see also McCleary-Evans, Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582,

11

584-85 (4th Cir. 2015). Much of Defendant's motion focuses on applying the *McDonnell Douglas* framework and analyzing whether Plaintiff successfully establishes a prima facie case of discrimination. Defendant relies on many of its own factual allegations not subject to review in the Complaint. (ECF No. 37-1). Because the Court declines to convert Defendant's motion to dismiss into a motion for summary judgment, the relevant inquiry is instead whether Plaintiff "allege[s] facts to satisfy the elements of a cause of action created by that statute." *Bing*, 959 F.3d at 616 (quoting *McCleary-Evans*, 780 F.3d at 585). Thus, Plaintiff's Title VII claim may only proceed if she has alleged facts that plausibly state Defendant violated Title VII by "discriminat[ing] against [her] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin[.]" *Id.*; 42 U.S.C. § 2000e-2(a); *see also Coleman* ,626 F.3d at 190 (internal citations omitted) ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relieve above the speculative level.'").

As an initial matter, the Court is satisfied that the Complaint alleges satisfactory job performance, and there is no dispute that Plaintiff is a member of a protected class. While Defendants oppose the notion that Plaintif's work performance was satisfactory, the Complaint sufficiently alleges many facts to the contrary, and as such, discovery is necessary on this issue.

Next, the Court finds that the Letter of Caution, Letter of Reprimand, and two suspensions constitute adverse employment actions under *Herkert v. Bisignano*, 151 F.4th 157, 165-66 (4th Cir. 2025) at this early stage. An adverse employment action need not be "tied to the terms and conditions of employment." *Id.* "[O]nly 'materially adverse' actions...'serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination' " will satisfy this element of a Title VII retaliation claim. *Id.* (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346,

12

358 (2024)). While Defendant correctly points to many cases that pre-date *Herkert*,[4] Defendant fails to address any argument concerning whether a reasonable employee would be dissuaded from making a charge of discrimination such that these letters could be considered to be material. Ultimately, this requires a plaintiff to show that "'a reasonable employee would have found [the action] to be materially adverse,' in that it 'might have dissuaded a reasonable worker' from pursuing a discrimination complaint." *Id.* at 166; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Here, in the context of Plaintiff's allegations, and taking all inferences in the light most favorable to Plaintiff, the Court finds that the Letters of Caution and Reprimand are serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination, should such letters be the result of taking such action. *Herkert*, 151 F.4th at 165-66. Both letters referenced the possibility of disciplinary action. (ECF No. 30-1 at 8, 12). She even pleads, as Defendant acknowledges, that she was suspended twice. (ECF No. 30-1 at 12, 15). Therefore, the first element is satisfied at this pre-discovery stage.[5]

Defendant also disputes whether the Complaint sufficiently alleges that a similarly situated comparator of a different race was treated differently. (ECF No. 37-1 at 20). Now under the Second Amended Complaint, Plaintiff alleges that Ms. Crossland had similar job responsibilities and engaged in various instances of workplace misconduct, yet she faced no reprimand. *E.g.*, (ECF No. 30-1 at 10). Discovery may well entitle Defendant to the conclusion it seeks at this early stage; however, the Court again looks to recent development in the Fourth Circuit to illuminate this issue.

---

[4] Both parties rely on pre-*Herkert* case law. While *Herkert* did not overrule such cases, the Court will consider the most up-to-date standard in the proper context.

[5] Much of Defendant's argument further centers around whether Plaintiff's Letter of Caution and Letter of Reprimand were the result of decreasing performance over time. (ECF No. 37-1 at 20). However, the Court is bound to the allegations set forth in the Complaint and does not consider the factual assertions upon which Defendant relies in advance of this argument at this stage. *Bing*, 959 F.3d at 616 (quoting *McCleary-Evans*, 780 F.3d at 585). Therefore, the Court is unpersuaded to dismiss the JMC Second Damended Complaint on that basis.

It is true that when a plaintiff "attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Williams-Johnson v. Paris Foods Corp.*, Civil Action No. RDB-24-1197, 2025 WL 775513, at *5 (D. Md. Mar. 10, 2025) (internal quotations omitted). This includes evidence "that the employees 'dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). But, in *Johnson v. Baltimore City, Md.*, 163 F.4th 808, 817 (4th Cir. 2026), the Fourth Circuit recognized that ""no single comparator" must "perfectly align[ ] with every incident…" because "the analysis does not require a perfect one on one fit." *Id.* "Instead, the analysis focuses on the 'similarity between [the] comparators' and their conduct such that a jury could reach an inference of discrimination, so long as the comparison is 'meaningful.'" *Id.* (quoting *Lightner v. City of Wilington*, N.C., 545 F.3d 260, 265 (4th Cir. 2008)) (alterations in original).  There, the Fourth Circuit concluded that a complaint sufficiently alleged "sufficient facts to demonstrate similar comparators so as to allow for a reasonable inference as to their similarities to [the plaintiff]" when all comparators were Baltimore police officers and were therefore "subject to the same standards." *Id.* Where the District Court concluded that there could be no inference of unlawful discrimination because none of the comparators "were accused of and found guilty following a trial board of misconduct similar to [the plaintiff]," the Fourth Circuit reasoned that a "perfect one-to-one match" is not necessary. *See id.* Thus, when multiple officers working for the same police station had a history of various

instances of misconduct, and only the plaintiff was charged in connection with one of his instances of misconduct, such allegations were sufficient to survive a motion to dismiss. *See id.*

Under *Johnson*, the Court is persuaded that the Complaint alleges enough to survive a motion to dismiss, now with the addition of the allegations concerning Ms. Crossland. While Defendant correctly asserts that Plaintiff's and Ms. Crossland's jobs are not a perfect match, *Johnson* addresses that very issue. They both reported to Mr. Hruska, and Plaintiff pointed to specific instances in which Ms. Crossland received no reprimand for misconduct of a similar enough nature to some of Plaintiff's workplace failures. (ECF No. 30-1 at 10). Turning to Mr. Mena, the allegations again satisfy *Johnson* at this early stage. The Second Amended Complaint alleges Mr. Mena assaulted Plaintiff and screamed profanities at work, yet he was not disciplined in the months during which Plaintiff continued to press the issue with her higher-ups. To that extent, the Court recognizes that discovery may well undermine such claims, as Defendant argues, yet such a determination at the motion to dismiss stage is premature. Thus, Plaintiff has sufficiently stated a Title VII claim on the basis of race or color discrimination. Therefore, Defendant's Motion to dismiss, or in the alternative, for Summary Judgment (ECF No. 37) is DENIED for racial discrimination under Count I on the basis of different treatment toward a similarly situated comparator outside her protected class.[6]

       b. <u>Plaintiff plausibly alleges facts that support her claim for Retaliation under Title VII.</u>

Plaintiff also brings a claim for Retaliation under Title VII based on the same conduct, theorizing that the adverse actions described above were retaliation for Plaintiff's complaints about the alleged discriminatory conduct. (ECF No. 30-1 at 14). A retaliation claim differs slightly from

---

[6] With respect to the claims for sex discrimination, which Defendant does separately contemplate, the Court applies the same reasoning insofar as the Complaint pleads Mr. Mena was a similarly situated comparator, and she filed internal complaints on the basis of race and sex.

a racial discrimination claim.  Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  Here too, the *McDonnell Douglas* test applies.  *Johnson v. United Parcel Serv., Inc.*, 839 Fed. Appx. 781, 782-83 (4th Cir. 2021) (citing *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013).  Thus, to state a claim, Plaintiff need only allege facts showing she engaged in a protected activity, her employer took an adverse action against her, and a causal relationship existed between the protected activity and the adverse employment decision.  *Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021).  Only the third issue is presently in controversy.

A plaintiff may demonstrate the causal link by (1) by establishing a "temporal proximity between the protected activity and adverse action," or (2) by establishing that "other relevant evidence indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector and Visitors of the University of Virginia*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Generally, "the gap between the protected activity and the adverse employment action can generally be no longer than two months." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (noting that three months was insufficient to infer a causal relationship without other evidence of a causal link).  Further, "intervening events can bridge what would otherwise be a prohibitively long temporal gap." *Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024) (citing *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)).

Defendant challenges whether Plaintiff has alleged facts entitling her to an inference of causation on the basis of temporal proximity. (ECF No. 37-1). However, the Second Amended Complaint pleads that Plaintiff first filed an internal harassment complaint about racial discrimination and sex discrimination on April 1, 2020, which was followed by the April 27, 2020, Letter of Caution. (ECF No. 30-1 at 8). Similarly, Plaintiff filed a second internal harassment complaint regarding the same on July 6, 2020, followed by a proposed suspension on September 1, 2020. *Id.* at 12. Both of these instances satisfy this circuit's case law concerning temporal proximity, even if minimally. *Barnhill*, 138 F.4th at 132; *Roberts*, 998 F.3d at 127. Therefore, the Court is also persuaded that Plaintiff has pled sufficient facts on this issue.[7]

Therefore, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (ECF No. 37) is DENIED with respect to Count I.

c. <u>Plaintiff fails to allege facts which plausibly support her claims of disability and age discrimination under the Rehabilitation Act and the ADEA.</u>

The Court cannot reach the same conclusion for Plaintiff's remaining claims. Defendant again seeks dismissal of Plaintiff's Rehabilitation Act and ADEA claims, arguing that Plaintiff has pled only that Mr. Hruska knew of Plaintiff's migraines and an unnamed disability for her spine, followed by no facts showing that such knowledge impacted her working conditions. (ECF No. 37-1 at 27). As with Plaintiff's Title VII claim, Defendant's memorandum applies the summary judgment standard to Plaintiff's Rehabilitation Act claim and centers around Plaintiff's purported failure to establish a prima facie case of discrimination through the *McDonnell Douglas* framework. *Id.* At the motion to dismiss stage, however, a plaintiff seeking relief pursuant to the Rehabilitation Act need only state a plausible claim for relief. *Smith v. McCarthy*, No. ELH-20-

---

[7] The Court again applies the same reasoning to the retaliation claim on the basis of sex.

419, 2021 WL 4034193, at *19 (D. Md. Sept. 3, 2021) (alteration in original) (quoting *Ciocola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016)) ("[T]he question at the motion to dismiss stage is whether the plaintiff has stated 'a plausible claim for relief under the [the Rehabilitation Act]."). Thus, Plaintiff must plead facts from which a court could plausibly infer that the Agency discriminated against her solely based on her disabilities in violation of the Rehabilitation Act. *Id.* With respect to Plaintiff's ADEA claim, she is required to "allege facts to satisfy the elements of a[n] [ADEA] cause of action" which are as follows: "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020) (alterations in original) (first quoting *McCleary-Evans*, 780 F.3d at 585, then quoting *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)). "[T]he complaint must contain factual allegations sufficient 'to raise a right to relief above a speculative level' and to support a 'reasonable inference' of discrimination." *Id.* (quoting *McCleary-Evans*, 780 F.3d at 585, 586).

The allegations in Plaintiff's Second Amended Complaint leave the Court to speculate that the Agency's disciplinary actions were due to Plaintiff's age or disabilities. Plaintiff sets forth the same list of disciplinary actions alleged as adverse actions in her Title VII claim and generally states that her employer was aware of her age and of her disabilities, specifying only that Mr. Hruska had knowledge of her spine disability and her migraines.  (ECF No. 30-1 at 17-18). Plaintiff further pleads that Ms. Crossland's disability status was "unknown," but seeks an inference that Ms. Crossland was a similarly situated comparator outside of the protected class, here on the issue of disability.  Such an inference would be improper, even construing the "unknown status" in the light most favorable to Plaintiff.  By Plaintiff's own pleading, the disability status is unknown. Her allegations concerning her "attitude" feedback after she developed PTSD is similarly deficient

for a lack of factual support for the notion that her employer had knowledge of her PTSD. (ECF No. 30-1 at 19). Therefore, Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, is GRANTED with respect to Count II.

Like under the Amended Complaint, Plaintiff's allegations concerning her age discrimination claim fail to support an inference that her age was the but-for cause of her discrimination. As Defendant states, "[n]one of the conduct—the same conduct underlies her race, color, and sex discrimination and reprisal claim under Title VII and disability discrimination under the Rehabilitation Act—supports a reasonable inference that age was a motivating, or even relevant, factor in Plaintiff's discipline." (ECF No. 27-1 at 29). Plaintiff's EEO complaints were grounded in her concerns for her belief that she was being discriminated against on the basis of race and sex. (ECF No. 30-1 at 8). The Court simply has no factual basis to reasonably conclude that the Agency's actions were motivated by bias, and much less reason to find that Plaintiff's age was the *sole* basis for the disciplinary actions as must be demonstrated under the Rehabilitation Act. *Smith*, 2021 WL 4034193, at *21. Even construed in the light most favorable to Plaintiff, "[her] allegations are too conclusory and too factually unadorned to give rise to a reasonable inference" that the Agency's disciplinary actions were made because of her age and/or disabilities. *Tickles*, 805 F. App'x at 208. Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment will therefore be GRANTED with respect to Count III.

## IV.   CONCLUSION

For the reasons stated, it is this 28th day of April, 2025, by the United States District Court for the District of Maryland hereby ordered that Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 37) is GRANTED in part and DENIED in part.

Dismissal shall be with prejudice. At this time, Count I is the sole remaining claim on the basis of race and sex, and Plaintiff may proceed solely upon that claim.

Dated: April 28, 2026                                    _____/s/_____
                                                         J. Mark Coulson
                                                         United States Magistrate Judge